So Ordered.

Dated: September 30, 2024



Rachel M. Blise
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Joshua C. Lang,

    Debtor.

Case No. 23-20782-rmb

Chapter 7

**DECISION AND ORDER GRANTING
DEBTOR'S MOTION TO AMEND SCHEDULE C**

Debtor Joshua Lang did not initially disclose or exempt a personal injury claim against 3M on his bankruptcy schedules. After he received a discharge and the case was closed, the debtor settled the claim against 3M. He now seeks to amend his schedules to disclose and exempt the claim. The U.S. trustee objects to the amendment. The Court holds that a debtor is required to demonstrate excusable neglect to amend his schedules after a case is initially closed, and that the debtor here has shown excusable neglect so he may exempt the claim.

**BACKGROUND**

The debtor proffered the following facts in an affidavit and through counsel. Counsel for the U.S. Trustee agreed that the debtor would testify to such facts at an evidentiary hearing, and that the Court can accept the proffered facts as true for the purposes of deciding the debtor's motion.

In early 2019, the debtor saw an ad on Facebook for a class action lawsuit claiming that ear plugs manufactured by 3M and used by members of the U.S. miliary were defective. The ad contained a link to a questionnaire designed to determine if the debtor had a claim, which the debtor filled out on the internet.

In August 2019, the debtor was contacted by Johnson Law Group in Houston, Texas offering to represent the debtor in connection with his claim against 3M. Shortly thereafter, the debtor signed an agreement with Johnson Law Group.

On February 20, 2020, Johnson Law Group filed a master short form complaint in the pending multi-district litigation against 3M. *See* Case No. 7:20-cv-14926 (N.D. Fla.). It is not clear from the record whether Johnson Law Group informed Lang that his complaint had been filed, or whether Lang knew that this meant he was involved in pending litigation against 3M.

After the complaint was filed, the debtor received emails from Johnson Law Group every few months regarding his claim:

- On March 20, 2020, Johnson Law Group emailed the debtor about the Covid 19 outbreak and stated that the firm would continue to represent its clients through the outbreak.

- On November 9, 2020, Johnson Law Group thanked the debtor for his military service and for entrusting the firm with his case.

- On April 12, 2021, Johnson Law Group requested that the debtor provide medical records, which he did.

- On March 9, 2022, Johnson Law Group requested that the debtor provide a DD-214 form, which provides certain information about a veteran's military service. The debtor provided the information two weeks later.

- On August 1, 2022, Johnson Law Group sent an update on the debtor's claims and other similar claims.

- On January 25, 2023, Johnson Law Group emailed the debtor with information regarding the bankruptcy of 3M subsidiary Aearo Technologies, LLC and 3M's litigation position with respect to the bankruptcy and the debtor's claim. The

- email specifically stated, "We still strongly believe a settlement or resolution of your claim will occur."

- On April 27, 2023, Johnson Law Group emailed the debtor with another update regarding the Aearo bankruptcy and 3M's litigation position. The email again stated, "We firmly believe a settlement or resolution of your claim will occur."

- On June 9, 2023, Johnson Law Group notified the debtor that the Aearo bankruptcy had been dismissed, which the firm characterized as "good news." The email stated that that the firm "still represent[s] you in your case against 3M AND your INDIVIDUAL case is filed in the MDL." The debtor responded to this email saying, "Thank you for the update."

- On August 10, 2023, Johnson Law Group provided another update on the litigation, notifying the debtor that 3M had appealed the verdicts in several bellwether trials. The firm again noted that it still represented the debtor and that "we still believe resolution by settlement is the most likely outcome for the majority of cases."

- On October 18, 2023, Johnson Law Group notified the debtor that settlement discussions involving the debtor's claim were moving forward.

- On November 22, 2023, Johnson Law Group notified the debtor that he would receive instructions from a third party to register for the 3M settlement.

- On December 15, 2023, Johnson Law Group again notified the debtor that he would have the opportunity to register for the 3M settlement.

- On January 29, 2024, Johnson Law Group informed the debtor that it was moving forward with "the next step" in the settlement process.

The debtor filed a chapter 13 petition on February 27, 2023. The case was later voluntarily converted to one under chapter 7. The debtor did not disclose his claim against 3M in his initial schedules filed on March 9, 2023, or his amended schedules filed on April 24, 2023. The chapter 7 trustee filed a no-asset report, and the Court entered an order discharging the debtor on June 27, 2023.

On February 7, 2024, Johnson Law Group contacted the chapter 7 trustee, who by that point had been discharged, and informed the trustee that the debtor had been offered "a gross settlement award of $10,000." The email from Johnson Law Group also noted that there was a

3

separate Extraordinary Injury Fund available to settle claims with those claimants who had experienced an extraordinary injury. Johnson Law Group said that it would not be able to determine if the debtor qualifies for any additional settlement amount until 2027.

On February 18, 2024, the debtor, through counsel, filed a motion to reopen the bankruptcy case. The debtor's motion also sought permission to file amended Schedule A/B and Schedule C to disclose and exempt the settlement with 3M. The Court reopened the case and allowed the debtor additional time to present evidence in support of his motion to amend the schedules. The debtor filed an affidavit in support of his motion. The U.S. trustee objected to the amendment, and the Court held a hearing on June 13, 2024.

During the hearing, counsel for the debtor proffered additional evidence that the debtor would offer if called to testify. Counsel said that the debtor was involved in a divorce proceeding filed on October 13, 2022, though the debtor and his spouse dismissed the case on January 30, 2023. In January 2023, the debtor was also diagnosed with post-traumatic stress disorder from his time in the military. And the debtor lost members of his platoon at some point shortly before filing bankruptcy. According to counsel for the debtor, the confluence of these circumstances so distracted the debtor that he forgot to include he had a pending claim against 3M when he filled out his bankruptcy schedules.

## DISCUSSION

Federal Rule of Bankruptcy Procedure allows a debtor to amend his schedules "as a matter of course at any time before the case is closed." Fed. R. Bankr. P. Rule 1009(a). The debtor's case was closed but has now been reopened. There is a split of authority with respect to whether such a debtor can amend his schedules after a case is reopened.

The first set of cases interprets Rule 1009 to provide that the debtor cannot amend his schedules after the case is initially closed, even if it is later reopened. *In re Bartlett*, 326 B.R.

4

Case 23-20782-rmb    Doc 60    Entered 09/30/24 17:09:43    Page 4 of 11

436, 438 (Bankr. N.D. Ind. 2005). Those courts reason that Rule 1009(a) allows amendments only "before the case is closed," not "any time the case is open" or "unless the case is closed." *Id.* at 439. The act of closing the case must terminate the right to amend; otherwise, the rule's limitation would be "completely illusory" because the debtor would need only to have the case reopened to file an amendment. *Id.* This interpretation is counter to a debtor's continuing duty to disclose all assets. It also makes an entire rule superfluous. Federal Rule of Bankruptcy Procedure 4003(b)(3) sets a time limit for objecting to certain exemptions first claimed after a case is reopened. The rule would be unnecessary if a debtor could never amend his schedule of exemptions after a case is first closed. *See In re Gerstner*, 649 B.R. 38, 42 (Bankr. E.D. Wis. 2023).

The second set of cases interprets Rule 1009 to allow debtors to amend their schedules at any time the case is open, even if it was previously closed. *E.g., In re Mendoza*, 595 B.R. 849, 857 (B.A.P. 10th Cir. 2019); *In re Muscato*, 582 B.R. 599, 602 (Bankr. W.D.N.Y. 2018). Courts following this view reason that "Rule 1009(a) contains no distinction between an original case and a case closed and then reopened." *Mendoza*, 595 B.R. at 856; *see also In re Goswami*, 304 B.R. 386, 392 (B.A.P. 9th Cir. 2003) ("There is no difference between a never-closed case and a reopened case with respect to amended exemption claims.").[1] This liberal interpretation could serve as a disincentive for debtors to fully disclose their assets and liabilities at the outset of a

---

[1] These courts also conclude that the limitation for amending schedules in Rule 1009(a) is not a deadline that can or should be extended under Bankruptcy Rule 9006(b) because that rule applies only "when an act is required or allowed to be done within a *specified period*." Fed. R. Bankr. P. 9006(b)(1) (emphasis added). They reason that a case is not closed within a set number of days, so the debtor's ability to amend schedules is not an act allowed to be done within a specified period. *Mendoza*, 595 B.R. at 857. This view is foreclosed by Seventh Circuit precedent holding that Rule 9006(b) applies to Federal Rule of Bankruptcy Procedure 2014(a), which likewise has no reference to a specific number of days. *See Gerstner*, 649 B.R. at 44 (citing *In re Singson*, 41 F.3d 316, 320 (7th Cir. 1994)).

5

case. Debtors may not make fulsome disclosure if they need only pay the reopening fee to have their case reopened and amend their schedules later.

The third view interprets Rule 1009 as setting a deadline of initial case closure for a debtor to amend his schedules. A debtor can later amend his schedules after a case is reopened only if the court extends the deadline under Federal Rule of Bankruptcy Procedure 9006(b). *In re Wantz*, 647 B.R. 541, 549 (Bankr. W.D. Mich. 2023); *In re Gerstner*, 649 B.R. 38, 42 (Bankr. E.D. Wis. 2023); *In re Sievert*, 634 B.R. 1030, 1037 (Bankr. W.D. Wis. 2021); *In re Poulette*, 493 B.R. 729, 733 (Bankr. D. Md. 2013). The Court concludes that the third view best balances the requirements that debtors make full disclosure of their assets and exemptions while allowing flexibility in appropriate circumstances.

Rule 9006(b)(1) provides that a deadline may be extended after expiration of the deadline only upon a showing of excusable neglect. Fed. R. Bankr. P. 9006(b)(1). When determining whether a party's omission was due to excusable neglect, the Supreme Court has highlighted four relevant factors for the court to weigh: (1) danger of prejudice to the moving party, (2) length of delay and potential impact on judicial proceedings, (3) reason for the delay and whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The Court also recognized that this determination is an equitable one and courts should "tak[e] account of all relevant circumstances surrounding the party's omission." *Id.*

First, the prejudice factor weighs in favor of allowing the amendment. The *Pioneer* decision discusses the danger of prejudice to the *debtor* (who was the nonmoving party in that case), but the Seventh Circuit has repeatedly emphasized that courts should focus on the effect of an extension on the *nonmoving party*. *See, e.g., Miller v. Chicago Transit Auth.*, 20 F.4th 1148,

6

Case 23-20782-rmb    Doc 60    Entered 09/30/24 17:09:43    Page 6 of 11

1153 (7th Cir. 2021); *United States v. Cates*, 716 F.3d 445, 448 (7th Cir. 2013). In this case, the debtor is the moving party, so the Court must focus on the effect on nonmoving parties.

The nonmoving parties here are the debtor's unsecured creditors, who stand to benefit from any recovery on the debtor's personal injury claim. By failing to disclose his claim, the debtor deprived the chapter 7 trustee of the ability to select counsel and participate in prosecution of the claim, which prejudiced the unsecured creditors. However, the debtor's claim is one of thousands of such claims against 3M, and the proposed settlement of $10,000 is almost certainly a standard settlement offered to many hundreds or thousands of the claimants. Any involvement of the chapter 7 trustee would not have resulted in any additional recovery for the estate. Moreover, it is undisputed that had the debtor disclosed the claim before the case was initially closed, he could have exempted the full amount of the settlement under 11 U.S.C. § 522(d)(11)(D). *See In re Poulette*, 493 B.R. at 735 (finding no prejudice to the estate when the claim was fully exempt).

Second, the length of the delay weighs against allowing the amendment. The debtor's ability to amend Schedule C as a matter of course ended on June 27, 2023 when the case was initially closed. The debtor waited 236 days, until February 18, 2024, to file a motion to reopen the case and amend his schedules. While that is not necessarily an inordinate amount of time, what occurred between those dates renders the delay less reasonable. After the bankruptcy case was closed, the debtor received at least five emails from Johnson Law Group informing him of the status of his claim and that settlement negotiations were moving forward.

It is also relevant that the debtor received two emails from Johnson Law Group while his bankruptcy was pending. Those emails informed the debtor that he still had a claim. The April 27, 2023 email came just three days after the § 341 meeting of creditors, yet he took no action to

7

Case 23-20782-rmb    Doc 60    Entered 09/30/24 17:09:43    Page 7 of 11

inform his counsel or the chapter 7 trustee that he had left the claim against 3M off his schedules. The debtor clearly read the June 9, 2023 email because he responded, "Thank you for the update."

Third, the reason for the delay weighs against allowing the amendment. The Seventh Circuit has noted that three other circuits have held that "fault in the delay is the preeminent factor in the *Pioneer* analysis. *In re KMart Corp.*, 381 F.3d 709, 715 (7th Cir. 2004) (citing cases from the First, Eighth, and Tenth Circuits). The Seventh Circuit found the factor to be "immensely persuasive" in the *KMart* case because the creditor's one-day delay in filing her proof of claim "was entirely within her control." *Id.*

Here, the debtor argues that he did not disclose the claim on his schedules because he was distracted by several major life events. He recently had a pending divorce case, he was diagnosed with post-traumatic stress disorder, and he had close colleagues who passed away shortly before the bankruptcy. He says that he was not thinking clearly during his bankruptcy case so did not remember that he had a pending claim against 3M. He blamed Johnson Law Group because its contact with him was so sporadic that he forgot about the claim.

The problem with this explanation is that the debtor did not simply leave a long-forgotten claim off his schedules. Between the debtor's initial contact with the Johnson Law Group and early 2023, the contact was a bit sporadic, coming only every few months. But the debtor received an update on January 25, 2023, just one month before he filed his petition. Moreover, as discussed above, the debtor received two communications from the law firm during the bankruptcy and several more after the case was closed. The debtor nevertheless waited until a settlement was in the offing to seek to amend his schedules.

8

Case 23-20782-rmb    Doc 60    Entered 09/30/24 17:09:43    Page 8 of 11

These facts stand in contrast to those in *In re Wantz*, 647 B.R. 541, and *In re Poulette*, 493 B.R. 729. In *Wantz*, the debtor contacted a personal injury attorney in 2017 with respect to a medical device that other plaintiffs had claimed to be defective. 647 B.R. at 544. The debtor did not disclose the potential claim on her bankruptcy schedules filed in 2018. *Id.* Shortly before receiving a discharge, the debtor signed a contract with the personal injury attorney, which stated that the attorney was still investigating her claim. *Id.* The debtor did not learn until 2021 that the medical device had in fact injured her and that she had a claim against the manufacturer. *Id.* at 545. The debtor filed a motion to reopen the case and amend her schedules to disclose and exempt the claim. *Id.* The court determined that the debtor had shown excusable neglect because the debtor did not understand that she even had a claim to disclose until well after the bankruptcy case was closed. *Id.* at 552-53. Here, the debtor was aware that he had a claim against 3M, having received many emails from Johnson Law Group to that effect before, during, and after the bankruptcy.

In *Poulette*, the debtor filed her bankruptcy petition without a lawyer. 493 B.R. at 731. The debtor had two claims, one against a contractor and one for medical malpractice, that she did not disclose on her schedules. *Id.* The debtor did disclose the contractor claim during the § 341 meeting of creditors. *Id.* at 732. The debtor did not disclose the medical malpractice claim, but at the time she was under the impression that it was not a viable claim and that if it was it would be wholly exempt so she did not need to disclose it. *Id.* at 731-32. When the debtor later sought to amend her schedules to disclose and exempt the claims, the court found excusable neglect because the debtor had tried in good faith to understand whether she needed to disclose the claims, she did disclose the contractor claim to the trustee, and she had no lawyer who could give her advice regarding the claims. *Id.* at 734-35. Here, the debtor had counsel but made no effort

to determine whether he needed to disclose the claim against 3M despite receiving notifications from Johnson Law Group during the case.

Finally, the debtor's good faith weighs in favor of the allowing the amendment. The debtor sought to reopen the case and amend his schedules almost immediately after he learned of the settlement. In seeking to establish excusable neglect, the debtor provided frank and fulsome information about his claim against 3M and his communications with the Johnson Law Group.

With two factors weighing in favor of excusable neglect and two factors weighing against, the Court considers the totality of the circumstances. One important consideration is the impact of a debtor's non-disclosure on the bankruptcy system. It is certainly unfortunate that the debtor here was facing difficult personal circumstances when he filed his bankruptcy petition. But the vast majority of consumer debtors who file bankruptcy do so amidst difficult circumstances, including divorces, deaths, accidents, injuries, health issues, job loss, property damage, and the list goes on. The bankruptcy system depends on debtors providing complete and accurate information on their schedules. If the Court were to forgive every forgetful debtor experiencing stressful circumstances, then the bankruptcy system would not be able to function.

Nevertheless, the Court finds it appropriate to place great weight on the prejudice factor in this case. *See Wantz*, 647 B.R. at 552 (finding the lack of prejudice to be "one of the most important facts"). The unsecured creditors are prejudiced in that they will not receive any portion of the settlement if the debtor is permitted to exempt the claim, but they would not have received any portion if the debtor had exempted the claim at the outset of the case. When the debtor initially filed his schedules, he did not use any portion of the $27,900 exemption for personal injury claims under 11 U.S.C. § 522(d)(11)(D). The $10,000 settlement is well below that threshold. In addition, the unsecured creditors were not prejudiced by the chapter 7 trustee's

Case 23-20782-rmb    Doc 60    Entered 09/30/24 17:09:43    Page 10 of 11

inability to participate in the litigation or negotiation of the settlement. The debtor here was not one of the "bellwether" plaintiffs identified by the district court overseeing the multi-district litigation, nor was he otherwise a lead or controlling plaintiff. He merely filed a claim, and his claim was one of many thousands lumped together for settlement. Participation by the chapter 7 trustee likely would have had no impact on the settlement timing, structure, or amount.

Considering the totality of the circumstances, particularly the lack of prejudice to the debtor's unsecured creditors, the Court concludes that the debtor has demonstrated excusable neglect and therefore may amend his schedules to disclose and exempt the claim against 3M up to $27,900. The Court emphasizes that the outcome of this case might have been different if the claim at issue had not been part of such a large mass tort case with a settlement that was not individually negotiated. In another case with different facts, the lack of prejudice may not weigh so clearly in favor of the debtor.

**ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED:

1. The debtor's Motion to Amend Schedule C (ECF No. 42) is GRANTED.

2. The debtor's Amended Schedule C (ECF No. 45) is deemed to be filed as of the date of entry of this Decision and Order for the purpose of determining the objection deadline in Federal Rule of Bankruptcy Procedure 4003(b)(1).

3. The U.S. trustee shall determine whether it is appropriate to appoint a chapter 7 trustee to investigate whether the debtor may have a claim for participation in the Extraordinary Injury Fund that will net a recovery sufficient to make a distribution to unsecured creditors. If no action is taken by the U.S. trustee or any other party in interest within 60 days from the date of entry of this Decision and Order, the Clerk shall re-close the case.

# # # # #